## MASSON *v.* WASHINGTON LOAN & TRUST COMPANY.

---

### WILLS; INCOME.

Where a testator, who was unmarried, provided by his will that his step-

---

Note.—Authorities discussing the question of duty of devisee of income to pay taxes are collated in a note in 32 L.R.A. 755.

mother, who was the particular object of his solicitude and bounty, should have, in addition to pecuniary bequests, the use for her life of his house, "free and clear of rent, taxes, insurance, and any and all other expenses which may be chargeable against said property," and that she should also have for life the income from the residue of his estate, which was to be managed and controlled by the executor, after deduction of all expenses incidental to its management, with remainder over after her death to a charitable institution, it was *held·* that the life tenant was entitled during her lifetime to the gross amount of the income of the estate, undiminished by the payment of taxes, insurance, and other expenses chargeable against the house, and that having received only the amount of the income diminished by the payment of such charges, although she had protested against such an interpretation of the will by the executor, her executrix was entitled, in a suit brought for the construction of the will, to receive from the executor the difference between the amount the life tenant received and the amount she should have received.

No. 2980.   Submitted January 5, 1917.   Decided February 5, 1917.

HEARING on an appeal by one of two defendants from a decree of the Supreme Court of the District of Columbia, in a suit by an executor for the construction of a will.        *Reversed.*

The Court in the opinion stated the facts as follows:

This is an appeal from a decree in the supreme court of the District of Columbia.

Edmund E. Masson, a resident of the District, died here on March 22, 1907, leaving a will and two codicils, dated respectively December 30, 1902, December 9, 1904, and April 11, 1906.   In his will testator stated that he was unmarried, provided for the payment of his funeral expenses and debts, and then bequeathed to his stepmother, Mrs. Henriette Helene Masson, of this city, the sum of $200, to be paid immediately upon his death, "and the further sum of $5,000, together with all of my household and kitchen furniture and effects, horse, carriages, harness, and jewelry, and direct that my trustee, hereinafter named, allow her to use and occupy my residence so long

as she may desire, free and clear of rent, taxes, insurance, and any and all other expenses which may be chargeable against said property." After making certain other bequests, he devised and bequeathed "all the rest, residue, and remainder" of his property to the Washington Loan & Trust Company, "in trust, to take charge of, manage, control, invest, and sell the same, or any part thereof, by and with the consent of my said step-mother, Mrs. Henriette Helene Masson, and to invest and reinvest the proceeds derived from any such sales as my said trustee, with her consent, may think for the best interests of my estate, and to pay the income therefrom, after deducting all expenses incidental to the management of my estate, in monthly or quarterly instalments, in the discretion of my said trustee, unto my said stepmother for and during the term of her natural life, and upon her death, after the payment of all expenses incidental to her last illness and funeral, or in the event that she should predecease me, then I direct my said trustee to pay over, transfer, and deliver the entire residuum of my estate unto the Episcopal Eye, Ear & Throat Hospital" of Washington, District of Columbia.

In the first codicil, after providing for certain additional small bequests, testator made the following provision: "To my stepmother, Henriette Helene Masson, as stated in my will, the sum of $5,000 and substantially all my income from notes and mortgages and houses and properties; but in regard to my house No. 813 Twelfth street, northwest, the income of which she is to have also,—if she should be unable to carry it on, on account of the worry resulting from it, or on account of poor health, and she should desire to retire into a private home, or in a home for the aged, I hereby will and desire that in the place of attempting to sell or dispose of said house * * * to obtain an income therefrom, she shall give possession of said house, and its furniture and bric-a-brac therein, to Mrs. Louise Kate Caldwell, except four additional pictures, which are to be given and handed to Mrs. Geneva Nairn (who painted them). Said Mrs. Louise Kate Caldwell to pay to Mrs. Henriette Helene Masson two thirds of the net income produced by said house.

\* \* \* Said net income to be paid shall not be less than $50 per month, and after the death of my stepmother, I desire to have my executors transfer the title to said house and its contents to Mrs. Louise Kate Caldwell, her heirs, and assigns; said transfer to take place before the Episcopal Eye, Ear, & Throat Hospital \* \* \* will have any right to present any claim to the residuum of my estate." The testator then provided that the cash donation to his stepmother be paid within six months after his death, and that certain sums should be paid the other legatees on account of their legacies every six months.

In the second codicil testator modified the provision last mentioned in the first codicil, restricting payments other than those to his stepmother and Mrs. Caldwell, "as I recognize that to pay $100 every sixth months would reduce too much the income of my stepmother, Mrs. H. H. Masson. It being expected that Mrs. Louise Kate Caldwell will assist and take care of Mrs. H. H. Masson, if requested by her also."

The above will and codicils were duly admitted to probate on June 24, 1907. The Washington Loan & Trust Company, as executor of said will, proceeded with the administration of the estate. From the first, Mrs. Masson demanded that the trust company pay to her the gross amount of the income from the estate before paying the taxes, insurance, and other expenses chargeable against the premises in which she had been granted a life estate, but the trust company refused her demand, contending that under the will and codicils she was to receive the income from the estate diminished by the payment of said taxes, insurance, and other expenses. Mrs. Masson continued to protest against this interpretation of the will up to the time of her death on January 11, 1915. She left a will naming appellant as executrix. The difference between the amount she would have received under the interpretation of the will contended for by her and the amount actually received under the interpretation placed upon it by the trust company was $2,377.52.

Appellant, as the executrix of the will of Mrs. Masson, insisting that she was entitled to the above amount, and the hospital (the residuary legatee) disputing the claim, the trust company

filed its bill praying that the will be construed and that it be instructed upon the disposition of the fund, as between the claims of the respective parties. The decree sustained the view of the trust company.

*Mr. W. A. Coombe, Mr. T. M. Wampler,* and *Mr. Daniel Thew Wright* for the appellant.

*Mr. Henry P. Blair* for the appellees.

Mr. Justice Robb delivered the opinion of the Court:

The sole question which we are called upon to determine, therefore, is whether the income which the testator directed to be paid his stepmother should be reduced by the taxes, insurance, and other expenses on the house she was to use and occupy, as long as she might desire, "free and clear of rent, insurance, and any and all other expenses." The answer to this proposition is to be found in the express provisions of the will and codicils. The testator was unmarried, and no one can read his will and its codicils without reaching the conclusion that his affection for his stepmother was that of a son. It well may be that he had known no other mother, and in interpreting his will we must have in mind that she was the particular object of his solicitude and bounty. Indeed, there is nothing to indicate that any other had any claim upon him. The inference is to the contrary, for he makes the hospital his residuary legatee.

In the first place, the will in express terms allows the stepmother to use and occupy the house in question, free and clear of all charges. This is a direct command, and any modification of it must be found in the language subsequently employed. The residuary clause of the will, in our view, in no way modifies this provision, for it merely directs the trustee to take charge of, manage, and control "all the *rest, residue, and remainder*" of the testator's property. The use and control of the house in question already had been provided for, Mrs. Masson having been made life tenant. The authority of the trustee as to this

house, therefore, was confined to the payment of the charges above enumerated. The income of the estate was to be derived from "all the rest, residue, and remainder" of the testator's property, and the trustee was authorized to deduct therefrom nothing more than the expenses incidental to the management and control of that property. Otherwise, it would result that the testator had in mind nothing more than a question of book-keeping, for obviously under the interpretation of the trustee the life tenant actually paid the charges from which she was expressly relieved by the terms of the will. This is only another way of saying that the practical result was exactly the same to her as though the provision relieving her from those charges had not been inserted in the will. Instead, therefore, of receiving the substantial income provided by the will, she received in the six years preceding her death a little over $1,000, or about $175 per year, $2,377.52 having been withheld. In other words, the income paid to the special object of the testator's solicitude and bounty thus was diminished to the advantage of the residuary legatee, whose interest was subordinate, and not superior, to hers. Under that interpretation, had the charges upon this house exceeded the income from the rest of the estate, the life tenant not only would have had no income, but would have been compelled to pay the balance of the charges. And yet it is apparent from the will and codicils that the testator intended she should have a substantial income from his estate, and in the last codicil he expressed solicitude lest her income be reduced too much.

It results from what we have said that the decree must be reversed, with costs, and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*